Tia ROBINSON, Plaintiff,

v.

**THE DETROIT NEWS, INC., Defendant.**

**No. CIV.A.01–0971 (RMU).**

United States District Court, District of Columbia.

June 27, 2002.

John F. Pressley, Jr., Alan Scott Gregory, Washington, DC, for Plaintiff.

Leslie P. Arrington, Robert C. Bernius, Elizabeth A. Allen, Nixon Peabody LLP, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

DENYING IN PART AND GRANTING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; STRIKING THE PLAINTIFF'S SURREPLY; DENYING THE PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. Tia Robinson ("the plaintiff" or "Ms. Robinson") brings this action for alleged breach of contract, promissory estoppel, breach of the covenant of good faith, and gender discrimination in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C.Code § 2–1401.01 *et seq.* Specifically, the plaintiff claims that her dismissal as an employee of The Detroit News, Inc. ("the defen-

dant") was the result of the defendant's failure to comply with contractual agreements and discriminatory treatment. For the reasons that follow, the court denies the defendant's motion for summary judgment on the promissory estoppel claim and grants the defendant's motion for summary judgment on the claims for breach of contract, breach of the covenant of good faith, and gender discrimination. The court also strikes the plaintiff's surreply and denies the plaintiff's motion to amend the complaint.

## II. BACKGROUND

Ms. Robinson brings this action against her former employer, The Detroit News, Inc., for breach of contract, promissory estoppel, breach of the covenant of good faith, and unlawful employment discrimination. Am. Compl. ("Compl.") at 3–5. Ms. Robinson's claims arise from her firing in January 2001 as an account executive at W*USA–TV Channel 9, a division of The Detroit News, Inc. ("WUSA"). Id. at 3. Before her employment with The Detroit News, Ms. Robinson worked at the CBS-owned station, WJZ–TV in Baltimore as an account executive from November 1998 to May 2000. Id. at 2. Her responsibilities at WJZ–TV consisted primarily of marketing and new business development. Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 1.

In March 2000, Ms. Robinson discussed the availability of an account-executive position at WUSA with Joel Vilmenay, the local sales manager for WUSA. Pl.'s Opp'n at 1. Account executives at WUSA are responsible for both generating advertising sales to new customers of WUSA and negotiating advertising sales called "transactional accounts." Def.'s Statement of Material Facts Not in Dispute ("Def.'s Statement") at 1. In addition, "[w]hile all account executives have responsibilities for both transactional and new business, some are given greater responsibility in one area." Id. at 2 (citing Mot. for Summ. J. Ex. 2 (Downey Dep.) at 32–33).

The principal factual allegations are as follows. Ms. Robinson did not have significant experience with "transactional" business, but both Dianne Downey, WUSA's Vice President of Sales, and Joel Vilmenay, Ms. Robinson's direct supervisor, acknowledge that they assured her that when The Detroit News hired Ms. Robinson, she would receive the appropriate training. Mot. for Summ. J. at 3–4. Ms. Downey and Mr. Vilmenay did not provide training specifics, but Ms. Robinson accepted the position under the assumption that WUSA would provide some form of training to help her conduct transactional business. Id. at 4–5. WUSA employed Ms. Robinson as an "at-will" employee and thus there was no written or oral agreement for any definite term of employment. Id. WUSA wanted Ms. Robinson to focus her efforts on new advertising sales, for which she agreed she required no training. Id. at 5. Ms. Robinson began receiving informal training in transactional business during her first month of employment. Id. at 6; Pl.'s Statement of Material Facts in Dispute ("Pl.'s Statement") at 3–4. Mr. Vilmenay gave the plaintiff a list of glossary terms and math exercises, and gave her some on-the-job training. Mot. for Summ. J. at 6.

WUSA hired two male account executives during Ms. Robinson's fifth month on the job. Id. at 8. WUSA expected the male account executives to spend most of their time on the transactional-accounts component of their jobs, unlike the plaintiff. Id. The male account executives also differed in that they had extensive sales experience but none in television, compared with Ms. Robinson's past experience specifically in selling television advertising

to new business. *Id.* at 8–9. Because WUSA does not have a standard training program for its account executives, the defendant contends that it provided functionally equivalent training to all three new hires. *Id.* at 9; Def.'s Statement at 6.

After six months, WUSA fired Ms. Robinson, stating that she had performance problems, namely her inability to grasp mathematical concepts and her failure to generate new business. Mot. for Summ. J. at 10. The plaintiff filed suit in D.C. Superior Court but the defendant removed the case to federal court. Notice of Removal dated May 8, 2001. The plaintiff filed her first amended complaint with defendant's consent, which corrected the name of defendant Gannett and added defendant The Detroit News, Inc. Consent Mot. to Amend Compl. dated June 7, 2001.

Subsequently, the defendant filed a motion to dismiss the first amended complaint or, in the alternative, for summary judgment. The plaintiff responded with an opposition, a proposed surreply, and an additional motion to amend. Pl.'s Resp. to Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Surreply") dated May 20, 2002; Mot. to Amend Compl. dated May 21, 2002. The court now turns to the pending motions.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dia-*

*mond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence tendered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

Finally, the D.C. Circuit has cautioned that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir.1997), *overturned on other grounds,* 156 F.3d 1284 (D.C.Cir.1998) (en banc); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

## B. The Court Allows the Promissory Estoppel Claim to Proceed ·

The plaintiff alleges that the defendant promised to train her sufficiently in transactional business if she were to accept the job.[1] Pl.'s Opp'n at 4–5. The court determines that a genuine issue of material fact exists as to whether there is an actionable claim for promissory estoppel. For purposes of summary judgment, a plaintiff satisfies her burden for a promissory estoppel claim if she demonstrates a dispute as to a material fact with regard to the following elements: "that the [promisor] made a promise, that [the promisee] suffered injury due to reasonable reliance on the promise and that enforcement of the promise would be in the public interest and would prevent injustice." *District of Columbia v. McGregor Properties, Inc.,* 479 A.2d 1270, 1273 (D.C.1984); *see also Oates v. Teamster Affiliates Pension Plan,* 482 F.Supp. 481, 488 (D.D.C.1979); *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.,* 307 N.J.Super. 461, 704 A.2d 1321, 1324 (1998).

First, contrary to the defendant's assertions that it never made a promise, the plaintiff argues that the defendant made an oral promise guaranteeing that it would provide her with adequate training. Pl.'s Opp'n at 1–2; Mot. for Summ. J. at 5. Moreover, the plaintiff's argument does not merely rely on allegations or conclusory statements. Rather, she describes three specific incidents when the defendant promised to train her in transactional negotiations. Pl.'s Opp'n at 1–2. First, the plaintiff claims that Ms. Downey assured the plaintiff that Mr. Vilmenay would train her. *Id.;* Mot. for Summ. J. at 4. Then, Mr. Vilmenay allegedly told the plaintiff he would teach her to conduct transactional business. Pl.'s Opp'n at 2; Def.'s Statement at 2. Finally, Dan Sahd, another account executive with WUSA who accompanied Mr. Vilmenay to the plaintiff's second interview, allegedly heard Mr. Vilmenay state that "he would give [the plaintiff] the training necessary to complete the job." Pl.'s Opp'n Ex. E (Sahd Dep.) at 8.

The defendant argues that even if it did make a promise, it remains unenforceable because it did not express specific conduct or a specified result. Mot. for Summ. J. at 13. This is not dispositive for the purposes of summary judgment when the question of whether a promise was made still remains in dispute. *See McGregor Properties, Inc.,* 479 A.2d at 1273. "We agree that, for purposes of estoppel, a

---

[1]. The plaintiff also initially advanced claims for breach of contract and breach of the covenant of good faith and fair dealing. Compl. at 3, 5. In response to the defendant's motion for summary judgment, however, the plaintiff did not include any argument on these points in her opposition. Under Local Civil Rule 7.1(b), "an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded." *Polk v. District of Columbia,* 121 F.Supp.2d 56, 71 n. 17 (D.D.C.2000) (Urbina, J.); *see also Johnson v. Greater Southeast Community Hosp. Corp.,* 903 F.Supp. 140, 150 n. 6 (D.D.C.1995), *remanded in part on different grounds by* 1996 WL 174379 (D.C.Cir.1996). Thus, the court treats these points as conceded and grants the defendant's motion for summary judgment on the breach of contract and breach of the covenant of good faith and fair dealing claims.

promise need not be as specific and definite as a contract, ... but in the final analysis there must be a promise." *Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C.1979). The revisions in the Restatement (Second) of Contracts § 90 (1979) omitting the language "of a definite and substantial character" also argue against strictly requiring a definite promise.[2] Restatement (Second) § 90. In this case, the issue of whether a promise was made will be a question of fact for a jury to determine when weighing Mr. Vilmenay's testimony against the plaintiff's testimony and what Mr. Sahd overheard.

Second, the court concludes that there is a genuine issue of material fact in dispute as to whether the defendant made the promise with the expectation that the promise would be relied on. FED. R. CIV. P. 56(c); *McGregor Properties, Inc.*, 479 A.2d at 1273. The defendant agrees that the plaintiff understood and believed that she would receive some training once she accepted the job. Mot. for Summ. J. at 5. Despite the absence of specificity, "Vilmenay promised [the plaintiff] training in transactional business." Def.'s Reply at 4. The fact that the defendant anticipated that the plaintiff would require some training raises legitimate questions about whether the defendant should have known that the plaintiff might rely on the defendant's promise. *McGregor Properties, Inc.*, 479 A.2d at 1273; Restatement (Second) § 90 cmt. b.

In addition, the court determines that there is a genuine issue of material fact in dispute as to whether the plaintiff did reasonably rely on the promise. FED. R. CIV. P. 56(c); *McGregor Properties, Inc.*, 479

A.2d at 1273. The plaintiff explicitly told WUSA that she had little experience in conducting transactional business. Pl.'s Opp'n at 2. Accordingly, the plaintiff can plausibly contend that there is a factual dispute as to whether she left her job at WJZ–TV reasonably relying on the supposed statements that WUSA would provide her with the appropriate training in transactional negotiations. Pl.'s Statement at 1–2.

Next, the plaintiff has met the requisite showing that she suffered a detriment of a definite and substantial nature due to her reliance on the promise. *McGregor Properties, Inc.*, 479 A.2d at 1273; *Pop's Cones, Inc.*, 704 A.2d at 1324. "In full reliance upon these representations, Ms. Robinson left her secure job in Baltimore with CBS (WJZ–TV) and ventured out to Washington." Pl.'s Opp'n at 2. As a result, the plaintiff's career path and employment record are allegedly permanently damaged, and the plaintiff has suffered financial hardship. Compl. at 3.

Finally, the court evaluates whether enforcement of the promise is in the public interest and would prevent injustice. *McGregor Properties, Inc.*, 479 A.2d at 1273 (D.C.1984); *Pop's Cones, Inc.*, 704 A.2d at 1326 (stating that "[a]s we read the Restatement (2d § 90), the strict adherence to proof of a 'clear and definite' promise ... is being eroded by a more equitable analysis to avoid injustice."). Especially in the area of at-will employment, courts recognize "losses incident to the reliance upon the job offer itself." *Peck v. Imedia, Inc.*, 293 N.J.Super. 151, 679 A.2d 745, 753 (1996); *see also Bower v. AT & T*

---

**2.** The Restatement (Second) omitted the following language in parentheses from Restatement (First) § 90: "A promise which the promisor should reasonably expect to induce action or forbearance (of a definite or substantial character) on the part of the promisee or a third person and which does induce such action or forbearance is binding only if injustice can be avoided by enforcement of the promise. The remedy granted for breach may be limited as justice requires." Restatement (Second) § 90.

*Technologies, Inc.*, 852 F.2d 361, 363 (8th Cir.1988).

One final point warrants attention. The defendant argues that even if the promise of training is enforceable, the plaintiff concedes that appropriate training was provided. *See* Def.'s Reply at 2. The plaintiff concedes no such thing. The defendant's incorrect assumption attempts to cloud the plaintiff's entire argument. The plaintiff's case rests on her so-far substantiated assertion that the defendant *failed* to provide training, which then led to her dismissal. Pl.'s Opp'n at 9–10. In sum, the plaintiff demonstrates genuine issues of fact in dispute to withstand summary judgment on the promissory estoppel count.

## C. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's Discrimination Claim

■ To prevail on a claim of gender discrimination under the DCHRA, D.C.Code § 2–1401.01 *et seq.*, this court applies the analytical framework used in Title VII cases. *Howard v. Best*, 484 A.2d 958, 977 (D.C.1984) (stating that because the DCHRA is "substantially similar to Title VII," the court will treat the alleged violations under both acts together). Therefore, the Title VII prima-facie case analysis established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), also applies to suits under the DCHRA. *Remedios Jose v. Hosp. for Sick Children*, 130 F.Supp.2d 38, 41 (D.D.C.2000); *Goos v. National Ass'n Realtors*, 715 F.Supp. 2, 4 (D.D.C.1989).

## 1. The *McDonnell Douglas* Framework Applies to the DCHRA

To prevail on a claim of gender discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The Supreme Court explained this scheme as follows:

· First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima-facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima-facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should .the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination .... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

■ Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 140–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff need not, however, establish a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992 (2002). As a general matter, a prima-facie case of discriminatory failure to train based on gender consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the employer provided training to its employees; (3) the plaintiff was eligible for training; and (4) the plaintiff was denied training given to other similarly situated employees who were not members of the protected group. *Malacara v. City of Madison*, 224

F.3d 727, 729 (7th Cir.2000); *Pafford v. Herman,* 148 F.3d 658, 667 (7th Cir.1998).

 The plaintiff has the burden of proving the prima-facie case by a preponderance of the evidence. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. "The burden of establishing a prima-facie case of disparate treatment is not onerous." *Id.* at 253, 101 S.Ct. 1089. By proving a prima-facie case, the plaintiff has established "a legally mandatory, rebuttable presumption." *Id.* at 254 n. 7, 101 S.Ct. 1089. Accordingly, if at trial, the trier of fact believes the plaintiff's evidence and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case. *Id.* at 254, 101 S.Ct. 1089. In addition, once a plaintiff can demonstrate that she has met objective employment qualifications, the plaintiff has established her prima-facie case. *Accord Medina v. Ramsey Steel Co.,* 238 F.3d 674, 681 (5th Cir.2001) (stating that while courts should consider objective qualifications at the first step of the *McDonnell Douglas* framework, courts should consider subjective criteria only at the second and third steps of the analysis to avoid collapsing the entire analysis into a single initial step); *Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir. 1985) (same); *Burrus v. United Tel. Co.,* 683 F.2d 339, 342 (10th Cir.1982) (same); *Lynn v. Regents of the Univ. of California,* 656 F.2d 1337, 1344 (9th Cir.1981) (same); *Walker v. Mortham,* 158 F.3d 1177, 1192–93 (11th Cir.1998) (holding that while a plaintiff may need to address relative qualifications between job applicants if the defendant presents them to rebut the plaintiff's presumption of discrimination, the plaintiff need not introduce evidence regarding relative qualifications to prove her prima-facie case).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). The defendant must articulate a clear and reasonably specific factual basis for its subjective reason to be legally sufficient, legitimate, and nondiscriminatory. *Id.* As the Eleventh Circuit has explained:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or … "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance.

That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc* ).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove to the fact finder by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence' " and that the plaintiff's membership in a protected class was the true reason for the employment action. *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997).

■ Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed earlier. *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097; *Aka,* 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable fact finder could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima-facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves,* 530 U.S. at 142–144, 120 S.Ct. 2097 (citing *Burdine,* 450 U.S at 255 n. 10, 101 S.Ct.

1089); *see also Aka,* 156 F.3d at 1290; *Mungin,* 116 F.3d at 1554.

The D.C. Circuit has ruled that simply casting doubt on the employer's proffered justification does not automatically enable the plaintiff to survive summary judgment. *Aka,* 156 F.3d at 1290–94. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

■ In short, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima-facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Id.* at 1289. But the plaintiff need not present evidence "in each of these categories in order to avoid summary judgment." *Id.* Indeed, the D.C. Circuit interprets Supreme Court precedent to mean that, in some cases, a plaintiff who presents a *prima-facie* case that "strongly suggests intentional discrimination may be enough by itself to survive summary judgment." *Id.* at 1289 n. 4 (citing *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089).

Applying these legal standards to the instant case, the court grants the defendant's motion for summary judgment on the discrimination claim.

## 2. The Plaintiff Cannot Establish a Prima–Facie Case of Discrimination

In its motion for summary judgment, the defendant argues that the plaintiff has not established a prima-facie case of discrimination "because she did not suffer an adverse job action, and she was not similarly situated to the two male account executives to whom she compares herself." Mot. for Summ. J. at 2. The court agrees that the plaintiff has failed to show that the nonmembers of the protected class were similarly situated.

The female plaintiff alleges that she was treated in a disparate manner when the defendant failed to provide her with equivalent training opportunities given to two similarly situated male account executives. Pl.'s Opp'n at 6–7, 12. When the defendant dismissed the plaintiff for failure to fulfill her job expectations, the plaintiff argued that the two similarly situated male account executives were retained despite their similar lack of production and their superior training. *Id.* at 3, 11–12.

■ Even assuming *arguendo* that the plaintiff could meet the other elements of the prima-facie case, the plaintiff bears the burden of proving that the male employees were similarly situated and then treated unequally. *O'Donnell v. Associated Gen. Contractors of America, Inc.,* 645 A.2d 1084, 1089 (D.C.1994) (quoting *Burdine,* 450 U.S. at 258, 101 S.Ct. 1089). As this court has explained:

> To be considered " 'similarly situated,' the individuals with whom the plaintiff seeks to compare ... her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same

conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it."

*Waterhouse v. District of Columbia,* 124 F.Supp.2d 1, 14 (D.D.C.2000) (quoting *Phillips v. Holladay Prop. Servs., Inc.,* 937 F.Supp. 32, 37 (D.D.C.1996)).

■ The court concludes that the plaintiff was not similarly situated to the two male employees, Kristopher Mackey and Don Waldon. Pl.'s Opp'n at 6; Mot. for Summ. J. at 18–19. Differences between the male account executives and the plaintiff are evident in their principal job responsibilities and backgrounds, which logically led to differences in their job training. First, the plaintiff and her male counterparts were both supervised by Mr. Vilmenay, but the plaintiff also met regularly with the Director of Integrated Marketing, Christina Eaglin. Mot. for Summ. J. at 19 (citing Mot. for Summ. J. Ex. 6 (Waldon Dep.) at 69). Ms. Eaglin oversaw the plaintiff's primary job responsibility, which was the development of new business. *Id.* Second, while Mr. Mackey and Mr. Walden shared the responsibility with the plaintiff of generating new business, the two male account executives worked primarily in transactional account business.[3] *Id.* at 18. Likewise, WUSA held them to different standards to reflect this difference in focus, specifically, "plaintiff had $2,000,000 standard to meet in transactional business accounts, Mr. Waldon had $3,600,000, and Mr. Mackey had $5,000,000." Pl.'s Opp'n at 13. Moreover, Mr. Mackey and Mr. Waldon began their jobs with no background in television experience, whereas the plaintiff had one-and-

---

**3.** Ms. Downey stated that the plaintiff and her male counterparts had two proportionally different jobs. Therefore, while Mr. Mackey supposedly had a 90 percent responsibility in transactional business and 10 percent responsibility in new business, "the opposite would be applied to (the plaintiff's) position." Mot. for Summ. J. Ex. 2 (Downey Dep.) at 33–34.

one-half years experience in the area of television marketing and new business development based on her work at. CBS. Mot. for Summ. J. at 19; Pl.'s Opp'n at 1.

The formal training the plaintiff points to as disparate treatment directly results from her male counterparts' different positions, roles, and responsibilities. Pl.'s Opp'n at 10–11. In short, the plaintiff cannot refute that Mr. Waldon and Mr. Mackey were hired to focus on transactional accounts and not the generation of new business. Def.'s Statement at 5–6. Because she has not met her burden to prove that she was similarly situated to Mr. Waldon and Mr. Mackey, she fails to establish a prima-facie case of gender discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's gender-discrimination claim.

### D. The Court Strikes the Plaintiff's Surreply

"The court may grant leave to file a surreply at its discretion." *American Forest & Paper Ass'n, Inc. v. United States Envtl. Prot. Agency*, 1996 WL 509601, at *3 (D.D.C.1996). The plaintiff failed to submit a motion for leave to file a surreply. The Federal Rules of Civil Procedure and this district's Local Civil Rules are silent on this issue. *Id.* A party seeking to file a surreply must move the court for leave to file such a surreply. *See, e.g. Longwood Village Restaurant, Ltd. v. Ashcroft*, 157 F.Supp.2d 61, 68 n. 3 (D.D.C. 2001); *Cramer Prods. v. Int'l Comfort Prods.*, 1990 WL 58711 at *2 (D.Kan.1990); *Arakelian v. Nat'l Western Life Ins. Co.*, 126 F.R.D. 1, 3 (D.D.C.1989). The court thus strikes the pleading as unauthorized.

Even assuming *arguendo* that the court would consider the pleading despite the plaintiff's failure to file a motion for leave to file a surreply, the court would

strike the proposed surreply. "The standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C.2001); *cf. Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 71, 74 (D.D.C.1998). The plaintiff's proposed surreply consists of a reiteration of arguments made in her original response to the defendant's motion for summary judgment. The plaintiff's own use of language, for example, "Once again in its Reply defendant makes factual allegations not supported . . . ," and "defendant's repeated ruse . . . ," illustrates the plaintiff's attempt to merely respond to the defendant's previously raised arguments. Pl.'s Proposed Surreply at 3. Because the plaintiff failed to file a motion for leave to file this surreply and because the proposed surreply merely reiterates arguments already made and does not add anything new, the court strikes the proposed surreply.

### E. The Court Denies the Plaintiff's Motion to Amend

#### 1. Legal Standard for Motion to Amend the Complaint

Federal Rule of Civil Procedure 15(a) provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." FED. R. CIV. P. 15(a). Once a responsive pleading is filed, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.; Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The D.C. Circuit has held that for a trial court to deny leave to amend is an

abuse of discretion unless the court provides a sufficiently compelling reason, "such as undue delay, bad faith or dilatory motive, or repeated failure to cure deficiencies by [previous] amendments [or] futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. 227); *see also City of Williams v. Dombeck*, 203 F.R.D. 10, 11 (D.D.C.2001). The court may also deny leave to amend the complaint if it would cause the opposing party undue prejudice. *Foman*, 371 U.S. at 182, 83 S.Ct. 227. In sum, the decision to grant or deny a motion to amend "is within the discretion of the District Court." *Id.*

A court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C.Cir.1996) (internal citations omitted). When a court denies a motion to amend a complaint, the court must base its ruling on a valid ground and provide an explanation. *Id.* An amendment would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss. 3 Moore's Federal Practice § 15.15[3] (3d ed.2000).

## 2. The Court Dismisses the Plaintiff's Motion to Amend Based on Futility

The plaintiff seeks leave to amend her complaint to clarify and respond to the defendant's argument that the initial amended complaint included employment discrimination not only in the area of training but also in the plaintiff's salary, termination, evaluation, and time of receipt of account list. Pl.'s Mem. in Supp. of Mot. to Amend. ("Pl.'s Mot. to Amend") at 1.

The plaintiff alleges that "[p]ursuant to the notice pleading requirements of Rule 8, the plaintiff is only required to provide 'a short and plain statement' of the claim." Pl.'s Mot. to Amend at 2; Fed. R. Civ. P. 8(a).

In this instance, the motion to amend is both futile and unauthorized. The court agrees with the defendant that the plaintiff disregarded the court's Initial Scheduling and Procedures Order dated September 4, 2001. Def.'s Opp'n to Pl.'s Mot. to Amend. ("Def.'s Opp'n to Mot. to Amend") at 2. Because the plaintiff filed her proposed motion to amend after the date specified in the court's order, the court applies the more rigorous for "good cause" Rule 16 standard to the plaintiff's amendment. Fed. R. Civ. P. 16(b); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir.2000). The court strikes the plaintiff's amendment filed eight months after the date specified in the scheduling order because of undue delay.

Furthermore, the court concludes that these new allegations would be futile because the court has already ruled that the gender-discrimination claim brought under the DCHRA cannot survive the defendant's motion for summary judgment and nothing in the proposed amended complaint would change the fact that the plaintiff would still be unable to show that she and the two male employees were similarly situated. *Taylor v. Washington Metro. Area Transit Auth.*, 109 F.Supp.2d 11, 12 (D.D.C.2000); *James Madison Ltd.*, 82 F.3d at 1099 (defining "futility" as the inability to survive a motion to dismiss). The court therefore denies the plaintiff's motion to amend the complaint.

## IV. CONCLUSION

For all these reasons, the court denies the defendant's motion for summary judg-

ment on the promissory estoppel claim. The court grants the defendant's motion for summary judgment on the claims alleging breach of covenant, breach of the covenant of good faith, and gender discrimination. Moreover, the court strikes the plaintiff's proposed surreply and denies the plaintiff's motion to amend her complaint. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 27 day of June, 2002.

## ORDER

**DENYING IN PART AND GRANTING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; STRIKING THE PLAINTIFF'S SURREPLY; DENYING THE PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of June, 2002, it is

**ORDERED** that the defendant's motion for summary judgment on the promissory estoppel claim is hereby **DENIED**; and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment on the breach of contract, breach of the covenant of good faith, and gender discrimination claims are hereby **GRANTED**; and it is

**ORDERED** that the court **STRIKES** the plaintiff's surreply; and it is

**FURTHER ORDERED** that the plaintiff's motion to amend the complaint is **DENIED**.

**SO ORDERED.**