# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 6, 2019        Decided August 21, 2020

No. 17-5265

UNITED STATES OF AMERICA,
APPELLEE

v.

DYNAMIC VISIONS INC, DOING BUSINESS AS DYNAMIC VISIONS
HOME HEALTH SERVICES AND ISAIAH M. BONGAM, OWNER
AND PRESIDENT OF DYNAMIC VISIONS INC.,
APPELLANTS

———

Consolidated with 17-5279

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:11-cv-00695)

———

*Jude Chinedu Iweanoge* argued the cause and filed the briefs for appellants.

*Isaiah M. Bongam*, *pro se*, argued the cause and filed the briefs for appellants.

*Caroline D. Lopez*, Attorney, U.S. Department of Justice, argued the cause for appellee.  With her on the brief was

*Charles W. Scarborough*, Attorney. *Michael Shih*, Attorney, U.S. Department of Justice, and *R. Craig Lawrence* and *Darrell C. Valdez*, Assistant U.S. Attorneys, entered appearances.

Before: SRINIVASAN *Chief Judge,* and GRIFFITH and KATSAS, *Circuit Judges.*

Opinion for the Court by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: Dynamic Visions, Inc., a home health care company, submitted claims for reimbursement to the District of Columbia Medicaid Program for services it purportedly provided to its patients. An audit revealed that the company failed to maintain adequate documentation of physician authorization for the services, as required by state and federal law. The federal government brought an action against the company and its owner under the False Claims Act for submitting false claims for reimbursement. The district court granted summary judgment to the government. We affirm the grant of summary judgment in large part but vacate the judgment as to a limited subset of the alleged false claims.

I.

A.

Through the Medicaid program, the federal government assists states and the District of Columbia in providing medical services to low-income individuals. *See* 42 U.S.C. § 1395 *et seq.* For the D.C. Medicaid program, the federal government reimburses providers for eligible medical services at a rate of seventy percent. *Id.* § 1396d(b). Eligible services generally include home health care, i.e., "necessary hands-on personal care assistance with the activities of daily living" in patients'

homes.  D.C. Mun. Regs. tit. 29, § 5000.2 (2003), 50 D.C. Reg. 3,957.

The D.C. Medicaid program requires home health care providers to maintain certain qualifications and comply with various regulatory requirements.  *See id*. §§ 5000–5199.  One requirement is that home health care providers develop a "Plan of Care" (POC) for each patient.  *Id.* § 5006.1.  The POC details the services the patient will receive and for how long, and it must be authorized and timely signed by a qualified healthcare professional.  *Id.* §§ 5006.3–5006.4.  The home health care provider must maintain accurate records of all POCs for each patient.  *Id.* § 5007.

Those regulations help to ensure that the D.C. Medicaid Program reimburses providers only for services that are appropriate and afforded to eligible beneficiaries.  The D.C. Department of Health Care Finance (DHCF) audits providers' records to examine whether reimbursements are "consistent with efficiency, economy and quality of care" and are "in accordance with federal and District rules governing Medicaid."  *Id.* § 5010.1.

B.

Appellant Dynamic Visions, Inc. is a home health care provider in the District of Columbia.  Appellant Isaiah Bongam is the sole owner and CEO of Dynamic Visions, which during the relevant time had approximately six employees. From 2006 to 2009, Dynamic Visions submitted reimbursement claims to the D.C. Medicaid Program for services provided to patients. Before receiving the reimbursements, Dynamic Visions was required to execute a Medical Provider Agreement.  Dynamic Visions certified that it would comply with federal and state standards for participation in the Medicaid program, including

the requirement to develop and maintain adequate POCs for each patient and keep accurate records of them.

During a routine audit of Dynamic Visions's operations, DHCF reviewed twenty-five randomly selected patient files from the years 2006 through 2008. DHCF determined that none of the patient files contained sufficient documentation to support Dynamic Visions's claims for reimbursement. DHCF concluded that the files lacked a POC or contained POCs that were deficient because they had no signature from a physician, had untimely or forged signatures, or had authorized fewer hours of care than Dynamic Visions claimed to have provided in seeking reimbursement.

DHCF alerted the FBI and the United States Department of Health and Human Services Inspector General of its findings. In December 2008, federal agencies executed a search warrant on Bongam's place of residence and Dynamic Visions's place of business, seizing patient files and other items. The ensuing investigation revealed that Bongam had been funneling money out of Dynamic Visions's bank accounts (which held federal funds from the Medicaid reimbursements) into his own private accounts, including an offshore account in Cameroon.

## C.

In April 2011, the government brought an action against appellants Dynamic Visions and Bongam for violations of the False Claims Act. 31 U.S.C. § 3729 *et seq*. The government alleged that appellants submitted false claims to the D.C. Medicaid Program by seeking reimbursement for services that had not been authorized by a valid POC. The complaint listed twenty-five patients and asserted the amount of unauthorized

reimbursements submitted for each patient, totaling $543,145.13.

In discovery, appellants repeatedly failed to produce documents or information responsive to the government's requests—most importantly, valid POCs for patients. Appellants claimed that they were not in possession or control of those documents because the FBI had seized them during the searches of Bongam's home and Dynamic Visions's place of business. Appellants were in possession, though, of four compact discs given to them by the government that contained searchable PDFs of all relevant documents. A magistrate judge held multiple meetings with appellants to provide instructions on how to search the discs.

After numerous warnings, the court eventually held appellants in contempt for failure to comply with the government's discovery requests. As a sanction, the court precluded appellants from relying, from that point forward, on any documents they had not yet identified in discovery.

The government moved for summary judgment. In its Statement of Material Facts, the government explained the particular way in which each of the patient files contained insufficient documentation to support claims for reimbursement: no POC, unsigned POC, untimely-signed POC, POC with a forged signature, or signed POC authorizing fewer services than Dynamic Visions purportedly provided. The government also identified how many invoices had been submitted for each patient and how much Dynamic Visions had received in reimbursements. The government's statement of facts was supported by a sworn affidavit of the FBI agent who reviewed all of the documents seized during the searches of Dynamic Visions's place of business and Bongam's home.

Appellants' response disregarded the district court's express warning that, unless they specifically denied each numbered statement of material fact, the fact would be deemed admitted. Appellants instead set out their own statement of facts, which was supported by little evidence other than an affidavit containing sworn statements by Bongam.

In October 2016, the district court granted the government's motion for summary judgment in part. *United States v. Dynamic Visions, Inc.*, 216 F. Supp. 3d 1, 5 (D.D.C. 2016). The court deemed the government's statements of material fact largely admitted because the statements in Bongam's affidavit were unresponsive to the government's factual statements, were legal arguments instead of statements of fact, or were conclusory and self-serving. *See id.* at 4–5. The court thus held that, for many of the patients, there was no genuine dispute of material fact that Dynamic Visions submitted claims for reimbursement for services that were not authorized by a valid POC. *Id.* at 15–16. The court also found that, because Dynamic Visions is a small operation and "even a cursory review" of the files would have revealed the "rampant" false claims, the company was at least reckless as to the fact that it submitted unauthorized claims for reimbursement to the D.C. Medicaid program. *Id.* at 16–17.

For a limited number of claims as to which the alleged falsity of the claim was based solely on a POC with an ostensibly forged physician signature, the court temporarily reserved judgment. *Id.* at 5. The government's sole evidence concerning those claims consisted of sworn statements from an FBI agent recounting her conversations with the physicians. The court deferred ruling on those counts until the government could obtain non-hearsay evidence in the form of sworn affidavits from the physicians themselves. *Id.* at 10–13. The court also deferred deciding Bongam's individual liability for

the false claims (as opposed to Dynamic Visions's liability). *Id*. at 5.

When the government eventually submitted the physician affidavits, appellants alerted the court that some of the affidavits identified a patient by a different Medicaid patient number than the number listed in the complaint. The government explained that, after the initial pleadings, it noticed that some of the patient numbers in the complaint were incorrect, and it then used correct numbers in its motion for summary judgment and in the affidavits. The court allowed the affidavits, determining that the error as to the patient numbers had caused no prejudice because the complaint had identified each patient both by name and patient number. The court denied appellants' motion for leave to file a surreply on the basis that it needed no further briefing on the issue.

After considering the physician affidavits, the court granted summary judgment in the government's favor on the remaining claims. *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16, 22 (D.D.C. 2016). The court also clarified with regard to Bongam's liability that, while there was insufficient evidence of his personal knowledge of the claims' falsity, the court would pierce Dynamic Visions's corporate veil so as to hold him jointly and severally liable for all damages and penalties. *Id.* at 24–25. The court reasoned that declining to pierce the veil would lead to "a highly inequitable result" because Bongam is "the sole owner, registered agent, president and chief corporate officer" of Dynamic Visions and failed to respect corporate formalities when he funneled money out of the corporation and into his private accounts. *Id.* at 25–26.

The court assessed damages and civil penalties totaling $1,986,232. *United States v. Dynamic Visions, Inc.,* 282 F. Supp. 3d 257, 263 (D.D.C. 2017). The court accepted the

government's calculation of $489,744.02 in damages from the unauthorized reimbursements and trebled that amount. *Id.* at 260–61. The court also ordered the maximum civil penalty of $11,000 for each of the forty-seven false claims submitted. *Id.* at 263. The court opted to assess maximum civil penalties because: (i) Dynamic Visions had forged signatures, (ii) the scheme had taken money from programs intending to serve needy patients, and (iii) the number of claims in the case, which were based on individual invoices, had underrepresented the total false claims because each invoice included multiple sub-invoices. *Id.* at 262–63.

Bongam and Dynamic Visions now appeal the district court's contempt order, summary judgment orders, and award of damages and civil penalties.

II.

We begin with appellants' challenge to the district court's grant of summary judgment to the government for violations of the False Claims Act. We review the district court's entry of summary judgment de novo. *See United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 25–26 (D.C. Cir. 2014). We affirm the district court's grant of judgment for False Claims Act violations in large part, but we vacate as to those claims for which the alleged falsity rests on Dynamic Visions's ostensible forgery of physician signatures.

Under the False Claims Act, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the federal government may be liable for treble damages and civil penalties. 31 U.S.C. § 3729(a)(1)(A). A claim can be false when a person "makes specific representations about the goods or services provided" but fails "to disclose noncompliance with material statutory,

regulatory, or contractual requirements." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016). The person must act "knowingly," which includes acting with a "reckless disregard" for the truth or falsity of the claims. 31 U.S.C. § 3729(b)(1).

To establish a False Claims Act violation at the summary-judgment stage, the government must show that the defendant knowingly submitted a false claim and that "there is no genuine dispute as to any material fact" in that regard. Fed. R. Civ. P. Rule 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While the defendant can avoid the grant of summary judgment against it by "com[ing] forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted), "mere allegations or denials" do not suffice, *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Applying those standards, we affirm the district court's grant of summary judgment as to those claims for which the falsity stems from the absence of any POC, or from a POC with no signature from a physician, an untimely signature, or an authorization of services more confined in scope than the services for which reimbursement was sought. Appellants do not dispute that the "regulatory . . . requirement[]" to maintain valid POCs for a patient is "material" to the government's decision to reimburse for services provided to the patient. *Universal Health Servs., Inc.*, 136 S. Ct. at 2001. As a result, if Dynamic Visions knowingly requested reimbursement for home health care services while "omitting [the] critical qualifying information" that a physician had not properly authorized the services as required by D.C. law, that was an "actionable misrepresentation[]." *Id*. at 2000–01.

The question is whether the government met its burden of showing, beyond genuine dispute, that Dynamic Visions knowingly submitted false claims. We answer that question in the affirmative, except, as explained below, for those claims as to which the alleged falsity rests solely on an ostensibly forged signature. Apart from those claims, the government adequately demonstrated that Dynamic Visions failed to maintain valid POCs and had the requisite knowledge that it was submitting claims for reimbursement without them.

In particular, the government provided sufficient evidence that the patient files had no POCs, untimely or unsigned POCs, or POCs that authorized fewer services than were purportedly provided. In connection with its summary judgment motion, the government explained (and submitted evidence supporting) the deficiency of each patient's file, including with regard to whether the POC was missing, inadequate, or authorized fewer services than were purportedly provided, as well as the number of invoices submitted under the POC and the total amount of reimbursements. *E.g.*, Appellee Supp. App'x 34 (asserting for Medicaid Recipient 5592 that Dynamic Visions submitted 46 invoices that were in excess of the care authorized by a POC, 308 invoices that were not authorized by a plan of care, and 19 invoices that were duplicative of claims authorized by a plan of care, for which Dynamic Visions was paid a total of $48,597.16 in reimbursements).

Appellants failed to meaningfully address those allegations. Instead, they responded only with highly generalized statements to the effect that they "submitted plans of care for Medicaid recipients signed by their physicians," and that they "maintained a policy and procedure manual that was compliant with DCHF regulations" and "followed the policy and procedures stated in the manual." App'x, 171–72. Those

statements are too conclusory to create a genuine issue. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

First, appellants provided no "supporting facts" for those assertions, such that "a jury would be in no position to assess" whether they are true. *Id*. Appellants, for instance, did not produce the "policy and procedure manual" they referenced, so there was no way to assess the manual's contents (or even confirm its existence). Nor did appellants produce any documentation to support their bald assertions that valid POCs existed for the patients. Moreover, even if Dynamic Visions generally "submitted plans of care," that does not mean it submitted POCs for the patients referenced in the government's motion, or that the POCs it did submit were timely signed and authorized the services purportedly rendered. Likewise, even if Dynamic Visions generally adhered to a manual, that does not mean it did so for the relevant patients. In short, appellants failed to allege facts sufficient to create a genuine dispute on whether Dynamic Visions maintained valid POCs for the patients identified in the government's submissions.

We also find no genuine dispute that Dynamic Visions submitted the claims with "reckless disregard" for their falsity (again, apart from the claims for which falsity rests on allegedly forged signatures). 31 U.S.C. § 3729(b)(1). When "even the shoddiest recordkeeping would have revealed that false submissions were being made," it is reckless for a provider to request reimbursement. *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997). While isolated instances of noncompliance might go unnoticed, the violations at Dynamic Visions were thoroughgoing: the audit revealed material deficiencies with regard to the POCs for virtually every patient file in the randomized sample. It would have been readily apparent to Dynamic Visions that the POCs were deficient or missing altogether.

Appellants argue that it is inappropriate to "allow[] a plaintiff to prove scienter by piecing together scraps of 'innocent' knowledge held by various corporate officials, even if those officials never had contact with each other or knew what others were doing in connection with a claim seeking government funds." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274–77 (D.C. Cir. 2010) (quotation marks omitted). We rely on no such theory, however. There is no need to aggregate the individual knowledge of Dynamic Visions's officers and employees to establish the requisite reckless disregard on the part of the company. Rather, any single person who looked at the patient files should have known that the company sought reimbursements unsupported by adequate POCs. We thus agree with the district court that Dynamic Visions, at minimum, acted in reckless disregard of the fact that its pertinent claims for reimbursement were unauthorized by a valid POC.

We reach a different conclusion, however, for the limited subset of claims as to which the alleged falsity rested solely on the purported forgery of the physician signatures on POCs. As to those claims, we conclude that the government failed to show the absence of any genuine dispute of material fact that Dynamic Visions forged the signatures.

As evidence of the purported forgery, the government submitted sworn affidavits by the relevant physicians attesting that Dynamic Visions's POCs "contained signatures that purported to be mine, but in fact were not my signature, nor were they signed by any other person who was authorized to sign for me." Appellee Supp. App'x 6. That evidence alone does not suffice to show that Dynamic Visions committed forgery. Even if the physicians themselves did not sign the forms, that does not establish that Dynamic Visions's

employees were the ones who did. There is at least some possibility that someone else in the physicians' own offices, without authority or permission, signed the POCs on the physicians' behalf. That possibility draws some support from the fact that Dynamic Visions submitted a number of claims for reimbursement accompanied by a POC with no physician signature at all. If Dynamic Visions was generally comfortable leaving the signature line entirely blank, it is unclear why it would resort to forging signatures for certain patients.

Because the government's evidence does not foreclose a genuine dispute as to whether Dynamic Visions forged physician signatures, we vacate the grant of summary judgment as to the corresponding subset of claims.

III.

We now address appellants' challenges to the district court's decisions to: (i) hold appellants in contempt and order sanctions during discovery, (ii) pierce Dynamic Visions's corporate veil, and (iii) consider the complaint to be amended with corrected patient numbers so the government could submit the physician affidavits. We reject those challenges.

First, appellants challenge the court's decisions to hold them in contempt and to preclude them from presenting evidence at the summary-judgment stage that they had not already produced in discovery. District courts are afforded considerable "deference [concerning] their decisions [on] whether and how to enforce the deadlines they impose," and we will not disturb those decisions unless they are "so disproportionate or unreasonable as to constitute an abuse of discretion." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822–24 (D.C. Cir. 2009). Here, the court exercised considerable patience with appellants and gave them multiple discovery-

deadline extensions for nearly two years. Appellants routinely failed to comply without providing any valid explanation. They contended that they were not in possession or control of the relevant documents, but they in fact had been given all documents electronically in PDF format and received instructions from the court on how to search them. In those circumstances, the court's contempt order and sanctions were not an abuse of discretion.

Second, appellant Bongam, citing his history of running the corporation in a manner satisfactory to regulatory overseers, argues that the district court erred in piercing the corporate veil to hold him liable for the conduct of Dynamic Visions. We review the court's grant of summary judgment on that issue de novo, *see Folliard*, 764 F.3d at 25–26, and we see no basis to overturn the court's decision to hold Bongam personally liable.

A court may hold the owner of a corporation responsible for the corporation's conduct when there is a unity of interest between the individual and the entity, and when insulating the owner from liability would lead to inequitable results. *See Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982). Here, the district court explained that Dynamic Visions is the "alter ego or business conduit of" Bongam, who is "the person in control" of the operation as the sole owner and CEO. *Dynamic Visions, Inc.*, 220 F. Supp. 3d at 25. Most importantly, regardless of Bongam's past history of compliance, it is undisputed that Bongam failed to maintain corporate formalities when he transferred "large sums" of money from Dynamic Visions's accounts—accounts containing reimbursements from the D.C. Medicaid program— to his own personal accounts. *Id*. We affirm the district court's conclusion that it would be unjust to allow Bongam to retain

funds wrongfully taken from, and now owed to, the government.

Third, Dynamic Visions argues that the district court erred in considering the government's complaint amended with the correct patient numbers contained in the physician affidavits and in allowing the affidavits, as well as in its refusal to allow Dynamic Visions to file a surreply on the issue. Such decisions are committed to the district court's discretion. *See Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996) (amending complaint); *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002) (motion for surreply). And here, those decisions were eminently reasonable.

Because the complaint listed the patients' names, appellants were aware of the patients' identities from the outset and had ample opportunity to identify any documents or information that may have aided their defense. Appellants do not claim that the presence of incorrect patient numbers in the complaint caused them to misidentify a patient, nor do they explain how it otherwise could have caused them any prejudice. With respect to the district court's declining to allow appellants to file a surreply on the issue, the court reasonably determined that it needed no further briefing given that appellants had included their arguments against amending the complaint in their motion for leave to file a surreply.

IV.

We last consider the district court's assessment of $1,986,232 in damages and civil penalties. We vacate the court's order as to both damages and civil penalties.

With regard to damages, the court included in its original damages assessment of $489,744.02 the amounts attributable

to those claims that were allegedly false solely because the POCs ostensibly contained forged signatures. Because we have vacated the grant of summary judgment as to those claims, we must set aside the damages award as well. In addition, the award of damages was based on the full amount of unauthorized reimbursements Dynamic Visions sought from the D.C. Medicaid Program. But as the government has brought to our attention, the federal share of those reimbursements is only seventy percent, s*ee* 42 U.S.C. § 1396d(b), and the government inadvertently neglected to reduce its request for damages accordingly. While we vacate the damages award for those reasons, we reject appellants' challenges to the government's evidence on damages for the reasons explained by the district court in rejecting the same arguments. *See Dynamic Visions, Inc*., 282 F. Supp. 3d at 260–61.

With regard to the assessment of civil penalties, the district court set forth three reasons for awarding the maximum amount of penalties. *Id.* at 262–63. One of the reasons was that Dynamic Visions had engaged in the conduct of forging signatures. Because we have vacated the grant of summary judgment as to those claims, and because the district court did not indicate whether the other two reasons, standing alone, would warrant awarding maximum civil penalties, we must vacate the penalties award. We express no view on whether maximum civil penalties would be appropriate without the forgery-related claims.

\* \* \* \* \*

For the foregoing reasons, we vacate the district court's grant of summary judgment as to the claims that were based solely on forgery and affirm the grant of summary judgment as to the remaining claims.  We also vacate the court's award of damages and civil penalties and remand for further proceedings in accordance with our opinion.

*So ordered.*