**DISTRICT OF COLUMBIA, Appellant,**

v.

**McGREGOR PROPERTIES,
INC., Appellee.**

No. 83–753.

District of Columbia Court of Appeals.

Argued June 26, 1984.

Decided Aug. 21, 1984.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for appellant.

Dorothy Sellers, Washington, D.C., with whom Neil I. Levy, Washington, D.C., was on the brief for appellee.

Before NEWMAN, Chief Judge, and BELSON and TERRY, Associate Judges.

NEWMAN, Chief Judge:

The District of Columbia appeals the grant of summary judgment for McGregor Properties, Inc. [McGregor]. We conclude that the trial court incorrectly granted summary judgment for McGregor, and accordingly we reverse.

In March of 1979, McGregor applied to the Surveyor of the District for the closing of the alley adjacent to the east side of its property.[1] The Surveyor responded to the application with a letter dated September 7, 1979, which relayed the conditions imposed on the alley closing by other D.C. agencies and stated:

> In addition, it has been determined that the public space which you propose to close is titled in the name of the United States, and you will be required to pay the fair market value of the land involved. The value of the area to be closed is 1204.44 square feet @ $65 per square foot—$78,288.60 for the total amount.

McGregor replied to the Surveyor by letter dated September 17, 1979, agreeing to

---

1. The alley is located within the interior of the block bounded by K, L, 21st and 22nd Streets, Northwest.

the conditions set forth and the Surveyor's determination of fair market value.

In March 1980, Mayor Barry submitted to the D.C. Council a bill to close the alley.[2] A committee of the Council prepared a report recommending favorable action on the bill,[3] and the Act was unanimously passed by the Council as emergency legislation on June 17, 1980, and approved by the Mayor on July 2, 1980. The Act requires an easement agreement in favor of the District; requires McGregor to pay fair market value for the west half of the alley; and authorizes the Mayor to sell the east half of the alley to McGregor at fair market value.

The Easement Agreement required by the Act was executed by McGregor and the District on July 31, 1980.[4] An Escrow Agreement between McGregor, the District, and the escrow agent was executed on August 14, 1980.[5] The Escrow Agreement states a fair market value of $65 per square foot for the entire alley.

During the time period of these transactions McGregor designed an office building whose plan utilized the footage of the alley; obtained a building permit based on this plan; and obtained a $13 million loan commitment for construction financing with a $131,000 nonrefundable loan commitment fee.

In December 1980 the District informed McGregor that the fair market value of the east half of the alley was $341.25 per square foot. This value was based on the report of a staff appraiser.[6]

McGregor applied for a temporary restraining order against the imposition of the $205,000 charge for the east half. The application was denied. McGregor subsequently amended the complaint to seek a refund of the $166,000 difference between the stated values of the east half and for other damages.

The Superior Court granted summary judgment to McGregor due to the District's failure to oppose the motion. That judgment was reversed by this court. Summary judgment was again entered in favor of McGregor after a hearing on the merits.

---

**2.** The closing of an alley requires compliance with a well-established procedure; enabling legislation is part of this process. This alley was closed pursuant to D.C.Code § 7–303 (1981), which was repealed on March 10, 1983, by D.C.Law 4–201, § 714, 30 D.C.Reg. 148. *See* note 9, *infra*.

**3.** Among other things the committee report cites $65 per square foot as the fair market value of the 1,204.44 square feet to be sold, and finds that both halves of the alley should be sold to McGregor at fair market value.

**4.** The alley closing was on paper only; the Agreement granted a perpetual easement and right of way over the alley to the District, and McGregor agreed to permanently maintain the alley at its own expense. The Easement Agreement was executed on behalf of the District by its Executive Secretary.

**5.** Upon closing, the alley would revert to the abutting landowners in two equal halves of 602.-22 square feet; the west half would go to McGregor, and the east half to the District as owner of the property adjacent to the east. It was the practice of the District to charge fair market value on behalf of the United States for the footage reverting to the adjacent lot owners, because title to the alley was considered retained by the United States. At the time of this alley closing, this practice of the District was under challenge. McGregor's payment for the west half of the alley was placed in escrow pending final decision in *United States v. Chesapeake & Potomac Tel. Co.*, 418 A.2d 114 (D.C. 1980) (United States does not retain title to alleys located within the original Federal City; the District is without authority to charge adjacent landowners for the closing of the alleys.)

**6.** The report reads:

> In my opinion, the fair market value of the 602.22 sq. ft. alley to be closed in square 73 as encumbered in a document filed [sic] restrictive covenant and easement agreement and dated 31st day of July 1980, as of December 9, 1980, is $205,507.575 (rounded to $205,500) or $341 per square foot, or $52.50 per sq. ft. per FAR.
>
> /s/
> John L. Wann, Jr.
> Staff Appraiser

This Fair Market Value is to be used only with the full appraisal report to follow and is subject to the assumptions contained therein.

This judgment is the subject of the present appeal.

McGregor contends that the September 1979 exchange of correspondence between itself and the Surveyor constituted an enforceable contract for the sale of the entire alley at $65 per square foot.

■■■ The District argues that no contract arose. However, even if a contract did arise, the District asserts that the Surveyor has no authority to enter into contracts on behalf of the District of Columbia, or to establish the fair market value of the District's property.[7] McGregor is deemed imputed with knowledge as to the scope of the Surveyor's authority. *Coffin v. District of Columbia, supra* note 7, 320 A.2d at 303. Further, D.C.Code § 1–339(a) (1981), which provides that no contract of $3,000 or more is binding on the District until it is approved by the Mayor, would preclude enforceability of the alleged contract. *See District of Columbia v. Singleton,* 81 A.2d 335 (D.C.1951).

McGregor asserts several arguments in seeking to establish an enforceable contract: delegation of approval authority by the Mayor to the Surveyor; ratification of the contract through the Escrow Agreement, and legislative validation through the Report accompanying the Bill passed by the City Council. Finally, McGregor asserts that the District is equitably estopped to deny the enforceability of the alleged contract.

■■■ We find that there was no contract between the District of Columbia and McGregor for the sale of the alley at a cost of $65 per square foot. Nothing in the record supports McGregor's assertion that authority to contract was delegated to the Surveyor by the Mayor. There was no ratification or validation as appellant contends, for neither the act of establishing an escrow nor the mention of price in the Committee report constitutes such. McGregor also has not shown the elements necessary to make out a case of promissory estoppel against the District. McGregor must show that the District made a promise, that McGregor suffered injury due to reasonable reliance on the promise and that enforcement of the promise would be in the public interest and would prevent injustice. *National Juvenile Law Center, Inc. v. Regnery,* 738 F.2d 455 at 460 (D.C.Cir. 1984); *see generally Heckler v. Community Health Services of Crawford County, Inc.,* — U.S. ——, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984). The Surveyor's letter did not constitute a promise, and even if it did, McGregor could not reasonably have relied upon it given its imputed knowledge of the Surveyor's lack of authority. McGregor's decision to proceed with plans and commitments for the proposed new office building before it obtained title to the alley was simply an independent business judgment. Moreover, McGregor was unable to demonstrate that the sale of property in the downtown business district for $65 per square foot rather than $341 per square foot was in the public interest and would prevent injustice.[8]

Therefore, we conclude that the District of Columbia was entitled to judgment. Accordingly the judgment of the trial court is reversed, and the Superior Court is ordered to enter judgment in favor of the District of Columbia.

---

7. D.C.Code §§ 1–901 *et seq.* (1981) provide for the duties of the Surveyor. The authority to negotiate contracts for the sale of real estate lies with the Director of the Department of General Services. *Coffin v. District of Columbia,* 320 A.2d 301, 303 (D.C.1974); D.C.Code § 31–301 (1981).

8. We note that the alley closing process was recently changed when the Street and Alley Closing and Acquisition Procedures Act of 1982, D.C.Code §§ 7–411 *et seq.* (1983 Supp.), went into effect. The Office of the Corporation Counsel has represented to the court that this new procedure will prevent the recurrence of the unfortunate circumstances which led to this appeal.