**T.K. CHAMBERLAIN, Appellant,**

v.

**Marion BARRY, Mayor of the District of Columbia, Appellee.**

**No. 91–182.**

District of Columbia Court of Appeals.

Argued Feb. 18, 1992.
Decided April 3, 1992.

Margaret A. Beller, Washington, D.C., for appellant.

James C. McKay, Jr., Asst. Corp. Counsel, with whom Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge, WAGNER, Associate Judge, and KERN, Senior Judge.

WAGNER, Associate Judge:

Appellant, T.K. Chamberlain, filed suit against the Mayor of the District of Columbia to recover rent subsidies and other damages claimed to be due under the District of Columbia's Tenant Assistance Program (TAP), D.C.Code §§ 45–2531, –2538 (1990).[1] The trial court granted summary judgment for the District. We affirm.

I.

On October 28, 1988, appellant entered a lease agreement with Victoria Carpenter for the premises located at 647 20th Street, N.E. in the District of Columbia. Appellant is the managing partner for a partnership which owns the property. Mrs. Carpenter had obtained a certificate of eligibility for participation in the Tenant Assistance Program from the Department of Public and Assisted Housing (the "Department").[2] An inspector for the Department inspected appellant's property and determined that the fair market monthly rental should be $706. However, the Department never approved the lease executed by appellant and the tenant, and the Department's representative cancelled an appointment at which appellant expected the lease to be approved and a tenant assistance contract to be entered. Appellant had allowed Mrs. Carpenter to take possession of the premises prior to the date scheduled for the hearing. In the complaint, appellant alleges that he relied upon "the approved certification" in renting the property to Mrs. Carpenter. Further, appellant alleged that the Department approved leases for other tenants in his properties after the tenants took possession, and the government paid the past due rents in a lump sum.[3]

The trial court found that the following facts were undisputed: (1) the parties never entered a tenant assistance contract; (2) the landlord was aware of TAP's requirements of a contract; (3) the premises had been inspected and a fair market rent assigned; (4) the tenant entered a lease agreement with the landlord, took possession on November 1, 1988, and was evicted in June 1989 for nonpayment of rent; and

1. The purpose of the TAP program is to help lower-income families obtain decent housing. D.C.Code § 45–2532(a) (1990). The government achieves this goal by entering into contracts to make rental assistance payments to housing providers on behalf of eligible families. D.C.Code § 45–2533(a) (1990).

2. The Department issues certificates of eligibility to applicants who meet requirements for participation in the program. 14 DCMR § 1820.1. Unless the time is extended, the certificate of eligibility expires in ninety days if the family does not submit a completed request for lease approval. D.C.Code § 45–2533(g)(1).

3. In the memorandum of points and authorities in opposition to the motion for summary judgment, appellant claimed that the personnel of the program urged them to allow occupancy prior to finalization of the lease for two other tenants. This fact is notably absent from appellant's allegations about the tenant in this case.

(5) the District in the past had paid rent subsidies from the date of possession once it executed a contract with the landlord. However, the court concluded as a matter of law that the District was not obligated to make payments to appellant without a tenant assistance contract and that the District was not estopped from denying liability.

## II.

A brief review of the statutory and regulatory scheme under which the TAP program operates is essential to an understanding of appellant's claims and the disposition of the issues on appeal. Pursuant to the statute, the Mayor is authorized to "enter into contracts to make rental assistance payments to housing providers of rental dwelling units on behalf of eligible families...." D.C. § 45–2533(a) (1990).[4] An individual seeking to participate in the program must submit an application to the Department, which will issue a certificate of eligibility if the family meets certain criteria. D.C.Code § 45–2533(d); 14 DCMR §§ 1810, 1820. The statute provides that the Mayor is authorized to enter into long-term tenant assistance contracts with housing providers which obligate the housing provider to offer and lease the rental units specified in the contract to families receiving tenant assistance. D.C.Code § 45–2532(d)(1)(A). The contract obligates the Mayor to make tenant assistance payments to the housing provider during the term of the contract in accordance with its terms provided the housing complies substantially with the housing regulations. The Mayor may also enter such contracts with housing providers of individual dwelling units on behalf of eligible families. D.C.Code § 45–2533. The Mayor is required to issue rules consistent with the statute to administer the TAP program. D.C.Code § 45–2532(e).

Regulations governing TAP require that families submit a request for lease approval with various certifications from the housing provider who agrees to lease a unit to them. 14 DCMR §§ 1914.1 and 1914.2. If the Department determines that the housing unit substantially complies with District housing regulations and other requirements governing the condition of residential premises and that the proposed lease complies with the law, it will notify the housing provider and the family of its determination of lease approval. 14 DCMR § 1914.3. After notification, the family and the housing provider are required to execute the lease, sign two copies of the tenant assistance contract, and provide the Department with a copy for execution. 14 DCMR § 1914.4. The regulations require the Department and the housing provider to execute a tenant assistance contract which becomes effective on the day assistance begins. 14 DCMR § 1916.1. A tenant assistance contract is defined by statute as a written document. D.C.Code § 45–2531(12).[5]

Although appellant's unit was approved in this case and the fair market rent was determined by a housing inspector, the tenant assistance contract was never signed. Appellant contends that in giving possession to the tenant prior to approval of the lease and execution of a tenant assistance contract by the District, he relied on the tenant's approved certification, an unspecified oral promise, and the Department's post-possession approval of two other properties leased by appellant under the program. Therefore, appellant argues, the District is estopped to deny the contract.

 To assert an estoppel effectively, appellant must show that: (1) the District made a promise to him; (2) he suffered injury due to reasonable reliance on it; and (3) the promise must be enforced to prevent injustice and promote the public interest. *District of Columbia v. McGregor Properties*, 479 A.2d 1270, 1273 (D.C.1984); *Lan-*

---

4. Unless otherwise indicated, all references to the D.C.Code are to the 1990 edition.

5. A "tenant assistance contract" is "a written contract between the Department and the housing provider" under the terms of which the Department agrees to make tenant assistance payments to the housing provider on behalf of an eligible family or for specific units held for and leased to eligible families for the duration of the contract. D.C.Code § 45–2531(12).

*dow v. Georgetown–Inland West Corp.,* 454 A.2d 310, 314 (D.C.1982). Assuming *arguendo* that appellant could identify evidence of a promise made by a government agent sufficient to establish the first element for an estoppel,[6] appellant cannot meet the element of reasonable reliance. With full knowledge of the program's requirements, it was unreasonable for appellant to rely on any oral promises to lease the property without first obtaining a written contract from the government. A person making or seeking to make a contract with a municipal corporation is charged or imputed with knowledge of the scope of the agency's authority. *Coffin v. District of Columbia,* 320 A.2d 301, 303 (D.C.1974).

 Appellant could not have relied upon an oral promise given his imputed knowledge that execution of a tenant assistance contract was necessary before the District would be bound to pay. *McGregor, supra,* 479 A.2d at 1273. The statute requires that a tenant assistance contract be executed before public funds are expended. D.C.Code § 45–2533(a); 14 DCMR § 1916. Payments to housing providers are required to be made only under the terms of tenant assistance contracts. 14 DCMR § 1910.3. The statute and regulations indicate that these contracts must be in writing. *See* D.C.Code § 45–2531(12); 14 DCMR § 1914.4(b). Not only is appellant chargeable with knowledge of the requirements for the program, appellant had specific knowledge of TAP's requirements. Even if the Department had previously acted in contravention of the statute and regulations governing the program, it is not required to repeat the errors, and appellant may not invoke estoppel to impose liability where the statute requires preconditions to recovery. *See National Hospital Service Soc'y Inc. v. Jordan,* 76 U.S.App.D.C. 26, 128 F.2d 460 (1942).

In this case, the trial court resolved the third element of estoppel against appellant as well. The court concluded that the equities did not favor appellant. We agree.

The District has a strong interest in maintaining control over its disbursements. The governing statute provides that the Department must maintain "a system to assure that it will be able to honor all outstanding certificates of eligibility with its funding authorization." D.C.Code § 45–2533(f). If housing providers could obligate the government for rent subsidies by placing a tenant in possession without an executed tenant assistance contract, it would thwart the government's ability to assure the availability of funds to meet program requirements. Such a result would also circumvent the explicit statutory and regulatory mandates. Weighed against this important governmental interest is the continued participation of landlords in the program. However, the viability of the program is best assured by adherence by all participants to the law and regulations governing it. Moreover, housing providers such as appellant have the ability to protect themselves from potential rent losses by complying with the specific requirements of the program (*i.e.,* execution of a tenant assistance contract which forms the basis for payment).

On this record, there are no material issues of fact in dispute. Appellant concededly had no tenant assistance contract with the government, and appellant cannot prevail on its claim of estoppel on the facts presented. Therefore, as a matter of law, the motion for summary judgment was properly granted. *See Cassidy v. Owen,* 533 A.2d 253, 255 (D.C.1987).

Accordingly, the judgment appealed from hereby is

Affirmed.

---

**6.** The record reflects only the allegation in the unverified complaint as follows:

[d]efendant breached its oral promise with plaintiff by its failure to make monthly payments to subsidize the rent.