**Marvin L. LEONARD, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 01–CV–810.**

District of Columbia Court of Appeals.

Argued May 30, 2002.
Decided June 20, 2002.

Ian A. Williams, Washington, for appellant.

Mary T. Connelly, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before STEADMAN, FARRELL, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge.

In this contract action, the Superior Court granted summary judgment to defendant, the District of Columbia, holding that a proposed lump-sum settlement agreement between a disabled District employee and the government did not take effect because it was not approved in writing by the Mayor's designee, the Director of the Department of Employment Services (DOES). Because the statute in question unambiguously requires that such agreements "must be in writing and signed by the Mayor or his or her designee," D.C.Code § 1–623.35(a) (2001), we agree and affirm.

## I.

Appellant has received disability retirement compensation since 1977 when he was injured while employed as a District of Columbia corrections officer. In 1998, a DOES official approached him about a possible lump-sum settlement for his disability entitlement. After discussions and an exchange of correspondence, appellant and a DOES claims examiner agreed on a proposed settlement figure of $90,324.78. The

examiner sent appellant a document entitled "Settlement Petition," which reflected the agreed amount and stated that the petition was being "submit[ted] ... for approval" pursuant to D.C.Code § 1–624.35, the predecessor statute (identical in language) to § 1–623.35(a). Reiterating that "*approval* of this settlement will discharge the [District] from ... all further liability" for the injury (emphasis added), the petition named "the Director of the Disability Compensation Program of the District of Columbia," *i.e.*, the Director of DOES, as the official required to approve the agreement.

The Settlement Petition was not signed by either appellant or the claims examiner. More importantly, the Director of DOES subsequently declined to approve it for several reasons, including the fact that it contained inadequate documentation about the extent of appellant's disability. Appellant therefore did not receive the lump-sum settlement, but instead has continued receiving bi-weekly compensation payments as before. In October 2000 he filed suit in Superior Court alleging breach of what he termed "a binding contractual agreement" between the District and himself.

## II.

■ D.C.Code § 1–623.35(a) provides in full:

> The claimant may enter into an agreement with the Mayor or his or her designee for a lump-sum settlement. Such settlements must be in writing and signed by the Mayor or his or her designee and the claimant. If the claimant is represented by counsel, the settlement documents must also be signed by the attorney for the claimant. Such settlements are to be the complete and final dispositions of a case and once approved

require no further action by the Mayor or his or her designee.

Appellant argues that, "[w]hile there can be no dispute as to the existence of signature and writing requirements in [this statute], there is nothing in [it] suggesting that the writing requirement is an element of [contract] formation rather than an incident of performance." Put differently, the signature and writing requirements may have been placed in the statute solely "for evidentiary and record-keeping purposes," rather than as constituent elements of a lump-sum agreement. At the least, appellant argues, the Settlement Petition met the requirement of a "writing," and "the signing requirement [is] intended to be a mere ceremonial incident of performance or execution, not an element of formation."

■ In construing a statute, we begin by examining its language; and "if the words are clear and unambiguous, we must give effect to its plain meaning." *James Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 45 (D.C.1989). Section 1–623.35(a) on its face does three things: (1) it authorizes the Mayor or his designee to enter into lump-sum settlement agreements; (2) it specifies the form such agreements must take (*i.e.*, they "must be in writing and signed" in the manner provided); and (3) it makes such an agreement, "once approved," effective as a complete and final disposition of the case. The clear and common-sense meaning of these provisions is that, to be effective, a settlement agreement must be in writing *and* bear the signature of approval of the Mayor or his designee (as well as the claimant). Appellant's contrary argument is essentially that "must" means "may"—that a writing and the signature of the Mayor's designee at most furnish "evidence" that a contract has been formed. But the normal rule is that verbs such as "must" or "shall" denote mandato-

ry requirements—here conditions of contract formation—"unless such construction is 'inconsistent with the manifest intent of the legislature or repugnant to the context of the statute.'" *Riggs Nat'l Bank of Washington, D.C. v. District of Columbia*, 581 A.2d 1229, 1257 (D.C.1990) (citations omitted). Appellant points to nothing in the statute or its context suggesting an intent to impose only precatory, "ceremonial," or evidentiary requirements of a writing and signature by the Mayor's designee.[1]

The proposed settlement reached by the claims examiner and appellant never acquired the status of an agreement as defined by the statute. Although appellant contends that the Settlement Petition itself satisfied the requirement of a written agreement, it did not. By its terms it was just that—a petition—which was to be submitted for *approval* by the Director of the disability compensation program. In fact it was not signed by anyone, not appellant, the claims examiner, *or* the Director. Appellant further cites to previous letters to him evincing the claims examiner's understanding that the settlement was complete and awaited only processing and issuance of the check. But whatever confidence those letters (or related oral conversations) exhibited, the Settlement Petition plainly revealed the examiner's understanding that the critical step of approval by the Director remained to be taken.[2] In any event, the claims examiner was not authorized to approve lump-sum agreements. D.C.Code § 1–623.40(2) permits the Mayor to "[d]elegate to the *Director* of the Department of Employment Services any of the powers conferred on him by this subchapter [governing disability compensation]" (emphasis added). In moving for summary judgment, the District asserted as an undisputed fact that "[n]o delegation of authority exist[ed] ... to any *other* agency or person to enter into an executed written agreement" (emphasis added). Appellant did not counter this assertion by arguing that the claims examiner had been (sub-)delegated authority to approve this agreement, or that discovery was necessary to establish whether or not that was so. *See* Super. Ct. Civ. R. 56(f); *see also* Rule 56(e) (party opposing properly supported summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial").

■■■■■ Appellant argues finally that whatever the claims examiner's actual authority, he "led Mr. Leonard to believe that he had authority to bind the District of Columbia," and that appellant relied on

---

1. Appellant points to the fact that § 1–623.35(a) neither "fall[s] within the general Statute of Frauds Chapter, [D.C.Code § ] 28–3501 *et seq.* [ (2001) ]," nor contains language such as "void [or] voidable" making explicit that contracts not complying with the writing and signature requirements are unenforceable. But legislatures are not limited to precise means or special words when conveying an intent to impose mandatory requirements, here, for a contract. Although "not presented in the traditional form of a statute of frauds," legislatures may require particular types of contracts to be in writing to be enforceable. E. ALLEN FARNSWORTH, FARNSWORTH ON CONTRACTS § 6.2 at 102 (1998). An example is a requirement that agreements to arbitrate be in writing. *Id.* Farnesworth also distinguishes be-

tween the statute of frauds, which "requires only that a contract be evidenced by a writing," and the requirement imposed by legislatures that "the contract *itself*, and not merely some writing evidencing it, be in writing and signed." *Id.* § 6.2 at 102 n. 13 (emphasis in original).

2. Consistent with this understanding, a subsequent letter from the claims examiner to appellant explained that the "signing and submission of the settlement petition to the D.C. Government" would have to be delayed for several weeks, at which point the examiner would contact appellant to discuss "how we shall proceed from there."

those assurances to his detriment.[3] To assert estoppel successfully in this governmental context, "appellant must show that: (1) the District made a promise to him; (2) he suffered injury due to reasonable reliance on it; and (3) the promise must be enforced to prevent injustice and promote the public interest." *Chamberlain v. Barry,* 606 A.2d 156, 158 (D.C.1992). Appellant argues that "the District," acting through the claims examiner, assured him that the contract was complete without need for further approval. The Settlement Petition drafted by the examiner, and twice referencing the need for "approval" by higher authority, would appear contrary to this assertion of a promise even by the examiner. But assuming at this summary judgment stage that the examiner made conflicting representations, appellant could not reasonably have relied on the purported authority of the examiner, as distinct from the Mayor or his designee, to bind the District. As in *Chamberlain, supra,* "appellant [is] chargeable with knowledge of the requirements" for a lump-sum settlement agreement, *id.* at 159, including signed approval by the Mayor or his designee. As indicated previously, no evidence was proffered that in fact this claims examiner (or any other) had been sub-delegated the Director's statutory authority. "A person making or seeking to make a contract with a municipal corporation is charged or imputed with knowledge of the scope of the agency's [and its agents'] authority." *Id.* Given that appellant was on constructive notice of the limits of the examiner's authority, his claim of reasonable reliance is unavailing. Moreover, in our view it would be contrary to the public interest to order a lump-sum payment from the treasury not approved by the supervisory official entrusted with administration of such payments.

*Affirmed.*

---

**3.** Appellant contended below that he had undertaken home improvements in anticipation of receiving the lump-sum payment, a claim the trial judge characterized as "remote, general, and unsupported."