**Eyob MAMO, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

Nos. 06–CV–845, 06–CV–1007.

District of Columbia Court of Appeals.

Argued Sept. 13, 2007.

Decided Oct. 18, 2007.

Harry C. Storm, with whom William A. Goldberg, Bethesda, MD, was on the brief, for appellants.

Richard S. Love, Senior Assistant Attorney General, District of Columbia, with whom Eugene A. Adams, Interim Attorney General at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, were on the brief, for appellee.

Before FARRELL, REID and FISHER, Associate Judges.

REID, Associate Judge:

In this case, appellee, the District of Columbia, exercised its power of eminent domain to take property on which appellants, Eyob Mamo and DAG Petroleum III, Inc. ("Mr. Mamo" or "Mamo/DAG" or

"DAG Defendants"), operated a gas station and convenience store franchise. Mr. Mamo complains that the trial court's judgment in favor of the District violated his constitutional Fifth Amendment right to just compensation because: (1) he received no compensation for his franchise, business and goodwill; and (2) the District is estopped from denying him such compensation. Discerning no error, we affirm the judgment of the trial court.

## FACTUAL SUMMARY

The record shows that, as of 2006, Mr. Mamo had been involved in the motor fuel business for about twenty years. He was a gas service station dealer/franchisee with Amoco Oil Company (now BP Products North America, Inc. ("BP")), and later, also a Shell motor fuel distributor through a Shell affiliate. He and the company in which he is the sole shareholder, DAG, obtained the right to operate the Good Hope Amoco gas station and convenience store (located at 1234 Good Hope Road, in the Southeast quadrant of the District) in 1996, through a renewable franchise agreement with Amoco/BP, and he continued to conduct his business there until the District prepared to take the property for the purpose of constructing a municipal office building.

In early July 2004, the then Mayor of the District, Anthony A. Williams, executed a Declaration of Taking for the Good Hope Road land and improvements which housed Mr. Mamo's business. The Declaration specified that $680,000 was the estimated just compensation for the taking of "the Property, including all interests therein." Paragraph 19($l$) of Mr. Mamo's franchise agreement provided that BP could "terminate or nonrenew" his agreement in the event of "[c]ondemnation or other taking, in whole or in part, of the facility pursuant to the power of eminent domain." BP sent a letter to Mr. Mamo on May 18, 2003, terminating and nonrenewing his franchise agreement, "effective ten (10) days prior to the date of condemnation or date of sale in lieu of condemnation." On July 2, 2004, the District filed against BP and others a civil complaint in condemnation pursuant to the Declaration of Taking, and an amended complaint on October 1, 2004 (Appeal No. 06–CV–845).

Mr. Mamo lodged an answer and counterclaim on October 25, 2004, alleging a "taking" of his "property," "the Good Hope Amoco Business, including the franchise, leasehold interest and goodwill." As affirmative defenses, he cited the Fifth Amendment to the Constitution; D.C.Code § 16–1314 (2001) (concerning condemnation procedures and transfer of title); and estoppel. His counterclaim asserted, in part: "By letter dated October 27, 2000 . . ., the [District], through its Department of Housing and Community Development, advised the Mamo/DAG Claimants that they would 'be properly compensated for [their] leasehold interest; [their] business; and goodwill' upon any condemnation." Mr. Mamo demanded just compensation of $500,000 for the District's alleged taking of his property. Subsequently, in response to the District's motions, the trial court (the Honorable John M. Campbell) granted possession of the Good Hope Road property to the District in January 2005, and dismissed Mr. Mamo's counterclaim in March 2005.

On March 15, 2005, the District filed a motion in limine to preclude Mr. Mamo from introducing evidence relating to the market value of his Good Hope Road business, on the ground that the District could only compensate for a taking of "property," and thus could not pay the value of Mr. Mamo's business. Judge Campbell denied the District's motion in April 2005, but the District filed a motion in May 2005,

to vacate the denial, alleging that Mr. Mamo was not entitled to consequential damages under D.C.Code § 16–1311 [1] and relevant case law. Mr. Mamo opposed the motion.

In August 2005, the District and BP lodged a joint application for the distribution of $722,180 to BP from the Court's Registry.[2] On October 20, 2005, Judge Campbell ordered that the funds be distributed to BP. Mr. Mamo's opposition to the distribution of the funds, filed on October 24, 2005, indicated that the Registry funds were earmarked to compensate "all interests" and " 'all persons entitled' to such compensation." In its October 27, 2005, reply to Mr. Mamo's opposition, BP took the position that the District and BP lawfully agreed on BP's compensation pursuant to D.C.Code § 16–1314,[3] and that "the DAG [D]efendants are currently litigating with the District the issue of whether they are entitled to their own award by virtue of the closing of their business." BP also maintained that the District's position is that Mr. Mamo is not entitled to such compensation; and further, that "the

1. D.C.Code § 16–1311 (2001) provides:
   § 16–1311. Condemnation proceedings by District of Columbia
   When real property in the District of Columbia is needed by the Mayor of the District of Columbia for sites of schoolhouses, fire or police stations, rights-of-way for roads, highways, streets and alleys or parts thereof, rights-of-way for water mains or sewers, or any other authorized municipal use, and that property cannot be acquired by purchase from the owners thereof at a price satisfactory to the officers of the District authorized to negotiate for the property, a complaint may be filed in the Superior Court of the District of Columbia in the name of the District of Columbia for the condemnation of the property or rights-of-way and the ascertainment of its value.

2. The District deposited an additional sum of $42,180 into the Court's Registry in October 2005, to increase the already deposited $680,000 to $722,180.

3. D.C.Code § 16–1314 states:
   § 16–1314. Declaration of taking; contents; deposit; transfer of title; determination; interest
   (a) In an action pursuant to this subchapter, the plaintiffs may file in a cause, with the complaint or at any time before judgment, a declaration of taking, signed by the Mayor, declaring that the property is thereby taken for use of the District of Columbia. The declaration of taking shall contain or have annexed thereto a-
   (1) statement of the authority under which and the public use for which the property is taken;
   (2) description of the property taken sufficient for the identification thereof;
   (3) statement of the estate or interest in the property taken for public use;
   (4) plan showing the property taken; and
   (5) statement of the sum of money estimated by the Mayor to be just compensation for the property taken.
   (b) Notwithstanding section 16–1319 [concerning payment and transfer of title to the District], upon the filing of the declaration of taking and the deposit in the registry of the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in the declaration, title to the property in fee simple absolute, or such less estate or interest therein as is specified in the declaration, shall vest in the District of Columbia, and the property shall be deemed to be condemned and taken for the use of the District, and the right to just compensation therefor shall vest in the persons entitled thereto. The compensation shall be ascertained and awarded in the proceedings and established by judgment therein, and the judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from that date to the date of payment. Interest may not be allowed on as much thereof as has been paid into the registry. A sum so paid into the registry may not be charged with commissions or poundage.

DAG Defendants' franchise agreement explicitly provides that they have no right to share in any condemnation proceeds received by BP," under Paragraph 25 of the agreement ("Unless otherwise provided by law, Lessor is entitled to the full amount of any award or proceeds for condemnation or other taking of the premises, in whole or in part, pursuant to the power of eminent domain or pursuant to a conveyance in lieu of condemnation.").

After reviewing additional case law, Judge Campbell issued an order on April 24, 2006, vacating his previous order and granting the District's motion in limine relating to its condemnation lawsuit; he concluded that Mr. Mamo could not recover damages "for the fair market value of [his] business, including such interests as good will." Consequently, he granted the District's motion to vacate his original order. The District submitted its motion for partial summary judgment on April 24, 2006, seeking judgment as a matter of law on the issue of Mr. Mamo's "entitle[ment] to just compensation for consequential damages to [his] Amoco business franchise and convenience store...." On June 27, 2006, the Honorable Robert E. Morin issued an amended order (correcting certain typographical errors in his June 21, 2006 order) which treated Judge Campbell's order pertaining to the District's motion in limine not merely as a pretrial evidentiary ruling on the admissibility of certain evidence, but rather, as a decision on the same legal issue raised in the District's motion for partial summary judgment (that is, Mr. Mamo's entitlement to consequential damages under the Fifth Amendment). Judge Morin considered that decision as having "sufficient finality" and declined to revisit it. He also addressed Mr. Mamo's estoppel contention, concluding that even if the District made the representations alleged by Mr. Mamo, "[t]he purported 'injury' suffered by [him] as a result of these representations is at best amorphous," and even viewing the averments in the light most favorable to him, "Mr. Mamo makes no showing of any specific injury by Defendants."

A few days later, Judge Morin entered a consent order and final judgment, signed by counsel for BP and the District, which specified, in part, that (1) the $722,180 paid to BP "shall be just and full compensation, inclusive of all prejudgment interest, for the [ ] taking of all right, title and interest in and to the [Good Hope Road] Property ....."; and (2) "the Court having granted summary judgment to the District on the Mamo/DAG claim for compensation for the loss of the value of their business by Order entered June 21, 2006, Defendants Mamo/DAG have no leasehold interest, and the only interest to be compensated as a result of the Plaintiff's taking is that of Defendant BP Products North America, Inc., the former owner...."

The court thereafter focused its attention on Mr. Mamo's lawsuit against the District, filed on February 17, 2006 (Appeal No. 06–CV–1007). Count 1 alleged a violation of the Fifth Amendment to the Constitution, and Count II asserted detrimental reliance. Paragraph 18 of the complaint declared: "The Good Hope Amoco Business, including its goodwill and franchise interest is 'property' for which the Mamo/DAG are entitled to just compensation pursuant to the Constitution of the United States, Amendment V, and the District through its actions is estopped from denying the entitlement of Mamo/DAG to such compensation." Judge Morin granted the District's motion to dismiss "on the basis of res judicata and/or collateral estoppel, because the Court has previously decided the same issue Plaintiff uses as a basis for the compensation in this case."

Mr. Mamo filed appeals concerning both the District's and his own lawsuit. This court consolidated his appeals.

## ANALYSIS

Mr. Mamo contends that the trial court erred by granting summary judgment to the District in the case brought by the District, and in dismissing his lawsuit. He argues that the court violated his constitutional Fifth Amendment right by "denying [him] just compensation for [his] franchise, business and goodwill destroyed by the District's condemnation of the [Good Hope Road] Property." The District maintains that neither District law, nor the Fifth Amendment to the Constitution, requires the payment of consequential damages or damages for business losses in eminent domain or Fifth Amendment taking cases.

### Summary Judgment and Mr. Mamo's Fifth Amendment Claim

We review Judge Morin's order granting summary judgment in favor of the District and his order dismissing Mr. Mamo's complaint, *de novo*. *See Ward One Democrats, Inc. v. Woodland*, 898 A.2d 356, 360 (D.C.2006). "[W]e must assess the record independently ... [and view it] in the light most favorable to the party opposing the motion." *Kelley v. Broadmoor Coop. Apartments*, 676 A.2d 453, 456 (D.C.1996) (citation and internal quotation marks omitted). "We will affirm the entry of summary judgment if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Id.* (citations and internal quotation marks omitted).

The Fifth Amendment provides, in pertinent part, "nor shall private property be taken for public use without just compensation." U.S. CONST. amend. V. We have not addressed the specific issue before us previously, whether the owner of a franchise business which occupies land taken by the District under its eminent domain power for public use, is entitled to compensation for business losses, goodwill, and other such consequential damages, under the Fifth Amendment. Therefore we first examine Supreme Court cases concerning claims for business losses, goodwill and other such consequential damages under the Fifth Amendment when land is taken for public use.

### Supreme Court Cases: General Legal Principles

The plaintiffs in *Mitchell v. United States*, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644 (1925) owned 440 acres of land in Maryland used to grow and can corn "of a special grade and quality." *Id.* at 343, 45 S.Ct. 293. The President of the United States issued a declaration that the land was needed to create a military facility, and the government took the land through its power of eminent domain. Because the land was "especially adapted to the growing of the particular quality of corn," the plaintiffs were unable to re-establish their business elsewhere. *Id.* Plaintiffs complained that they received only $76,000 for the value of their land, appurtenances and improvements, but *nothing* for the business; consequently they brought a lawsuit seeking $100,000 as compensation for their canning business, on the ground that the business had been taken without just compensation as required by the Fifth Amendment. *Id.* The court acknowledged that the "special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain." *Id.* at 344–45, 45 S.Ct. 293 (citations omitted). But, as the court declared, "[t]he settled rules of law ... precluded [the President from] considering ... consequential damages for

losses to their business, or for its destruction." *Id.* at 345, 45 S.Ct. 293 (citing *Joslin Mfg. Co. v. Providence*, 262 U.S. 668, 675, 43 S.Ct. 684, 67 L.Ed. 1167 (1923)). *Joslin* reiterated the principle that: "Injury to a business carried on upon lands taken for public use ... does not constitute an element of just compensation, in the absence of a statute expressly allowing it." *Joslin Mfg. Co.*, 262 U.S. at 675, 43 S.Ct. 684. Thus, in *Mitchell*, the court stated categorically that "[n]o recovery [for business losses or the destruction of the business] can be had [ ] as for a taking of the business." *Mitchell*, 267 U.S. at 345, 45 S.Ct. 293.

Almost twenty years after *Mitchell*, the Supreme Court reiterated the legal principle of no recovery for business losses, goodwill, or consequential damages in cases where property is taken for public use, in *United States v. General Motors Corp.*, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). There the court explained:

> The sovereign ordinarily takes the fee. The rule in such a case is that compensation for that interest does not include future loss of profits, ..., the loss of "good-will" ..., or other like consequential losses which would ensue the sale of the property to someone other than the sovereign. No doubt all these elements would be considered by an owner in determining whether, and at what price, to sell.... But the courts have generally held that they are not to be reckoned as part of the compensation for the fee taken by the Government.

*Id.* at 379, 65 S.Ct. 357 (footnote omitted). Since *Mitchell*, the court has repeated sev-

eral times the principle that "absent a statutory mandate the sovereign must pay for only what it takes, not for opportunities which the owner may lose." *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 282, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943). *See also, e.g., United States v. 564.54 Acres of Land*, 441 U.S. 506, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979) (in limiting just compensation to the fair market value of the land despite allegation that burdensome and costly regulations made relocation of the business operated on the land impossible, court cites its previous "determination that nontransferable values arising from the owner's unique need for the property are not compensable"); *United States v. 50 Acres of Land*, 469 U.S. 24, 33, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984) (reiterating that "the Fifth Amendment does not require any award for consequential damages arising from a condemnation").

### Supreme Court Cases: Exceptions to General Principles

Despite these cases which articulate the clear legal principle that business losses, goodwill and other such consequential damages generally are not compensable under the Fifth Amendment Taking Clause, Mr. Mamo relies on other Supreme Court decisions which, he claims, require the District to compensate him for his business losses, franchise interest and goodwill. In his reply brief, he emphasizes *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893). That case is unique and rather complex.[4] The fed-

---

**4.** The Monongahela Navigation Company ("the Company") received a charter from the State of Pennsylvania in 1836 to construct dams and locks relating to navigation on the Mon River between Pittsburgh and Virginia. The actual controversy, which was the subject of the litigation, arose after the Pennsylvania

legislature enacted a supplement to the Company's charter and the Congress of the United States passed related legislation. The supplement and federal legislation concerned the construction of lock and dam No. 7 pertaining to plans to extend the navigation work to Morgantown, West Virginia. The Company

eral government not only took property used by the company to collect tolls, but the government also collected the same tolls. Significantly, in the years following the *Monongahela* case, the court narrowly interpreted it, saying, for example, that "[t]he franchise [ ] was not merely a contract in respect of the property taken, but was an integral part of it[.]" *Omnia Commercial Co., v. United States,* 261 U.S. 502, 513, 43 S.Ct. 437, 67 L.Ed. 773 (1923). And, the court interpreted the case as grounded primarily on the doctrine of estoppel. *See Greenleaf–Johnson Lumber Co. v. Garrison,* 237 U.S. 251, 265, 35 S.Ct. 551, 59 L.Ed. 939 (1915) (where the court noted its earlier decision in *Lewis Blue Point Oyster Cultivation Co. v. Briggs,* 229 U.S. 82, 89, 33 S.Ct. 679, 57 L.Ed. 1083 (1913), "as sustaining the view that the case rested upon estoppel-rested upon the fact that the lock and dam had been constructed 'at the instance and implied invitation of Congress' "); *see also PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 83 n. 7, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *United States v. Rands,* 389 U.S. 121, 126, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967); *Omnia Commercial Co.,* 261 U.S. at 513–14, 43 S.Ct. 437.

Mr. Mamo also relies on *Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949), but that case, unlike the one before us, involved a temporary taking of the property and business. In stressing that the government had condemned the claimant's property for the very purpose of "carrying on the [laundry] business" for the war's duration, the Court in *Kimball* recognized the uniqueness of this "temporary interruption," which, unlike "the final severance of occupancy," "so greatly narrows the range of alternatives open to the condemnee that it substantially increases the condemnor's obligation to him." *Id.* at 12, 69 S.Ct. 1434. In addition, Mr. Mamo invokes *Almota Farmers Elevator & Warehouse Co., v. United States,* 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973). But, as the trial court recognized, that case concerned the very different issue of valuation of improvements to property by the holder of a leasehold interest the government was condemning. The question, the Court said, was "[w]hether, upon condemnation of a leasehold, a lessee with no right of renewal is entitled to receive as compensation the market value of its improvements . . . because of the expectancy that the lease would have been renewed." *Id.* at 473, 93 S.Ct. 791. While answering this question affirmatively, the Court stressed what it was not holding: "The only dispute in this case is over how those improvements are to be valued, not over whether Almota is to receive additional compensation for business losses. Almota may well be unable to operate a grain business elsewhere; it may well lose the profits and other values of a going business, but it seeks compensation for none of that." *Id.* at 475 n. 2, 93 S.Ct. 791. Citing *Mitchell, supra,* the Court then reiterated the principle that "the Government [is] not obliged to pay for business losses caused by condemnation." *Id.*

### The Trial Court's Resolution of the Fifth Amendment Claim

■ Our *de novo* review of the record in the light most favorable to Mr. Mamo, and

completed that construction in 1884. In 1888, Congress enacted legislation authorizing the Secretary of War to purchase, if necessary by condemnation, dam and lock No. 7 for a specified sum of money. The legislation specified that "in estimating the sum to be paid by the United States the franchise of said corporation to collect tolls shall not be considered or estimated." *Id.* at 313, 13 S.Ct. 622. The court reversed and remanded the case for a new trial on damages.

the legal principles reflected in the Supreme Court cases discussed above, reveals that the trial court properly granted summary judgment to the District on Mr. Mamo's Fifth Amendment claim, as a matter of law. *Ward One Democrats, Inc., supra,* 898 A.2d at 360; *Kelley, supra,* 676 A.2d at 456. Under general principles governing the Fifth Amendment Taking Clause, Mr. Mamo was not entitled to "consequential damages" for business losses, or even for the destruction of his business. *See Mitchell, supra.* Nor can he claim damages related to a temporary taking of his business as in *Kimball.* And, he candidly conceded during oral argument that he cannot prevail on a theory of compensation for his leasehold interest, which was extinguished prior to the District's taking of the Good Hope Road property.

Nor can Mr. Mamo recover under a theory that he has a protected statutory right or entitlement to consequential damages which is protected through the Fifth Amendment. He contends that his "franchise and the goodwill associated with it are recognized and protected under both local and federal law, and thus clearly meet the test of an entitlement." We disagree. Nothing in the District's condemnation statute, D.C.Code § 16–1311, *et seq.* (2001), provides for the recovery of business loss, goodwill, or other such consequential damages. Nor is there any explicit provision in the District's Retail Service Station Act ("the RSSA"), D.C.Code § 36–301.01, *et seq.* (2001) which permits the recovery of such damages. Neither the RSSA's definition of goodwill in § 36–301.01, nor its § 36–303.05 governing the sale, assignment or other transfer of a marketing agreement, grants a statutory entitlement to the recovery of goodwill or business loss in eminent domain taking cases. Had the Council of the District of Columbia intended that the District compensate businesses like Mr. Mamo's for

business loss, goodwill and other such consequential damages, its intent would be obvious on the face of the condemnation statute, or at least in its legislative history (on which Mr. Mamo does not rely). Since he cannot point to any District law which creates a protected property right, Mr. Mamo's reliance on *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), to demonstrate that his "goodwill is a protected property interest subject to compensation" is unavailing. In *Ruckelshaus,* the Supreme Court declared "[t]hat intangible property rights protected by state law are deserving of the protection of the Taking Clause has long been implicit in the thinking of this Court[.]" *Id.* at 1003, 104 S.Ct. 2862. But, the court's specific holding was based on the principle that "property interests ... are ... created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 1001, 104 S.Ct. 2862 (citations omitted). As the court said: "[T]o the extent that Monsanto has an interest in its health, safety, and environmental data cognizable as a trade secret property right under Missouri law, that property right is protected by the Taking Clause of the Fifth Amendment." *Id.* at 1003–04, 104 S.Ct. 2862 (footnote omitted). Here, there is no District law creating a right to just compensation for consequential damages where the District takes property by eminent domain.

Furthermore, Mr. Mamo has not established, through nonconclusory evidence, that BP received compensation for goodwill or business loss for the Good Hope Road gas station and convenience store, and that he was entitled to share such compensation under 15 U.S.C. § 2802(d)(1) of the federal Petroleum Marketing Prac-

tices Act ("the PMPA").[5] What the court declared in *Bajwa v. Sunoco, Inc.*, 320 F.Supp.2d 454 (E.D.Va.2004) is directly applicable in this situation. There, the Commonwealth of Virginia exercised its eminent domain power to take property on which Mr. Bajwa operated a Sunoco gas station dealer franchise; Sunoco terminated its franchise dealer agreement with Mr. Bajwa. The franchisee, like Mr. Mamo, maintained that the PMPA protected his franchise interest and required just compensation. But, the court declared:

> The PMPA does not entitle a franchisee to compensation from the owner for his leasehold in the event of a condemnation; the act only requires that "the franchisor shall fairly apportion between the franchisor and franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will." 15 U.S.C. § 2802(d)(1). Virginia law does not compensate the property owners for loss of business opportunity or good will. (Citation omitted). The sale price received by Sunoco, therefore, could not have contained compensation for business opportunity or good will. Accordingly, the PMPA does not require that Sunoco share the sale price with [Mr.] Bajwa. No other provision of the PMPA provides for compensation to [Mr.] Bajwa.

*Id.* at 459. Here, the District and BP obviously negotiated the sum of $722,180. which was paid to BP for its Good Hope Road property since the final payment differed from the initial amount offered by the District, but the record is silent as to whether the condemnation price included any sum relating to Mr. Mamo's business. Under those circumstances, we cannot conclude that the PMPA's fair apportionment directive (15 U.S.C. § 2802(d)(1)) was violated. Significantly, in accordance with Mr. Mamo's franchise agreement, BP terminated his lease prior to the date of condemnation; hence he no longer had a leasehold interest, and the District's condemnation law does not authorize recovery of business loss or goodwill. In short, the PMPA is of no assistance to Mr. Mamo. *See Bajwa; see also Heir v. Delaware River Port Auth.*, 218 F.Supp.2d 627, 638–39 (D.N.J.2002) (stating that "the right to compensation extends only as far as a party's contractual rights permit"; the gas station and convenience store owner franchisee "contracted away [ ] right to continuation of [ ] franchise beyond [the eminent domain condemnation]," and hence, he is "not entitled to any compensation for the losses resulting from [the taking].") (citations omitted).

In short, Mr. Mamo cannot prevail under any of his Fifth Amendment arguments. Judge Morin did not err by treating Judge Campbell's ruling on the District's motion *in limine* as a decision concerning Mr. Mamo's entitlement to consequential damages and as a basis for granting the District's motion for partial

---

5. Section 2802(d)(1) of 15 U.S.C. provides:
   (d) Compensation, etc., for franchisee upon condemnation or destruction of marketing premises. In the case of any termination of a franchise (entered into or renewed on or after the date of enactment of this Act [enacted June 19, 1978] ), or in the case of any nonrenewal of a franchise relationship (without regard to the date on which such franchise relationship was entered into or renewed)—

(1) if such termination or nonrenewal is based upon an event described in subsection (c)(5) [condemnation or other taking under eminent domain power], the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will[.]

summary judgment. Therefore, for the reasons set forth in this opinion, in Appeal No. 06–CV–845, the trial court properly granted judgment as a matter of law in favor of the District on the issue of Mr. Mamo's right to damages for his franchise interest, business losses and goodwill.

### The Promissory Estoppel Issue

■ Finally, Mr. Mamo insists that the District was estopped from denying him compensation because the District's letter of October 27, 2000, promised his attorney that: "your client will be properly compensated for his leasehold interest; his business; and goodwill." He contends that the trial court "erred when it found that the District was not estopped from taking a legal position diametrically opposed to that which induced Mr. Mamo's reliance." The District asserts that Mr. Mamo failed to establish the necessary elements of promissory estoppel. Judge Morin's amended order in Appeal No. 06–CV–845, granted the District summary judgment on Mr. Mamo's promissory estoppel claim, on the basis that even assuming that the "representations" in Mr. Teasley's October 27, 2000 letter regarding compensation for his consequential damages "were authorized and binding on the District," Mr. Mamo failed to "make [a] showing of any specific injury suffered by [him]."

■ "[T]o successfully raise an estoppel argument against the District, [Mr. Mamo] 'must show that the District made a promise, that [he] suffered injury due to reasonable reliance on the promise and that enforcement of the promise would be in the public interest and would prevent injustice.'" *Hospitality Temps Corp. v. District of Columbia,* 926 A.2d 131, 139 (D.C. 2007) (quoting *District of Columbia v. McGregor Props.,* 479 A.2d 1270, 1273 (D.C.1984)); *see also Leonard v. District of Columbia,* 801 A.2d 82, 86 (D.C.2002);

*Chamberlain v. Barry,* 606 A.2d 156, 158 (D.C.1992). Under the circumstances of this case, we conclude that Mr. Mamo "could not reasonably have relied on the purported authority of [Mr. Greg Teasley, the District of Columbia Department of Housing and Community Development employee (project manager) who signed the letter of October 27, 2000], as distinct from the Mayor or his designee, to bind the District." *Leonard,* 801 A.2d at 86. There is no showing on this record that Mr. Teasley had been delegated authority to commit the District to pay business loss and goodwill damages. Even assuming he had such authority, the District's condemnation statute did not provide for the payment of such consequential damages upon the exercise of the power of eminent domain. Moreover, Mr. Mamo has not demonstrated that he relied to his detriment on Mr. Teasley's promises. Nor has Mr. Mamo shown any misconduct on the part of Mr. Teasley or other District government official for the nonpayment of such damages; but, as we have stated, "'the doctrine of equitable estoppel, if applicable against the government at all, may be invoked only where there is a showing of some type of affirmative misconduct by a government agent.'" *Leekley v. District of Columbia Dep't of Employment Servs.,* 726 A.2d 678, 680 (D.C.1999) (quoting *Robinson v. Smith,* 683 A.2d 481, 492 (D.C. 1996)). On this record, we discern no affirmative misconduct by the District. In sum, because Mr. Mamo failed to establish an element of promissory estoppel, he cannot prevail on that theory; and thus, Judge Morin properly granted the District's motion for partial summary judgment in Appeal No. 06–CV–845. *See Kelley, supra,* 676 A.2d at 456; *Leonard,* 801 A.2d at 86; *Leekley,* 726 A.2d at 680.

### Appeal No. 06–CV–1007

■ The trial court incorporated its final order relating to the District's lawsuit

in its final order dismissing Mr. Mamo's lawsuit, with prejudice. It then granted the District's motion to dismiss "on the basis of *res judicata* and/or collateral estoppel, because the court has previously decided the same issue [Mr. Mamo] uses as a basis for compensation in this case." With respect to a motion to dismiss, we review the allegations of the complaint in the light most favorable to the nonmoving party, and "[d]ismissal is impermissible unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.,* 870 A.2d 58, 62 (D.C.2005). "Under the doctrine of claim preclusion (*res judicata* ), a valid final judgment on the merits absolutely bars the same parties from relitigating the same claim in a subsequent proceeding." *Parker v. Martin,* 905 A.2d 756, 762 (D.C.2006) (cases and internal quotation marks omitted). Mr. Mamo does not assert that the dismissal of his lawsuit on *res judicata* grounds constituted error. Indeed, he states that his lawsuit "was filed as a precaution to address procedural concerns advanced by the District that [his] claims for compensation separate from the real estate interest could only be raised in a separate action." Since he sought to relitigate, with the same parties, the same claim pertaining to consequential damages that the trial court resolved against him in the District's lawsuit, the trial court properly dismissed his action. *Id.*

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*